UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

**NEREUS SUPPLY CHAIN, INC.,**
**IAN ZARETZKY, and**
**IM ZARETZKY, LLC,**

    **Plaintiffs,**

    v.                                          Case No. 25-CV-160

**FREIGHTRO, INC.,**
**BEN MASLOWSKI,**
**MATT COSTELLO, and**
**ALEXANDER BAIN,**

    **Defendants.**

---

### DECISION AND ORDER ON DEFENDANTS' PARTIAL MOTION TO DISMISS

---

Nereus Supply Chain, Inc., Ian Zaretzky, and IM Zaretzky, LLC, sue Freightro, Inc., Ben Maslowski, Matt Costello, and Alexander Bain alleging various state law claims arising from the parties' business relationship. (Third Am. Compl., Docket # 17.) Defendants move to dismiss under Fed. R. Civ. P. 12(b)(6). (Docket # 21.) For the reasons set forth below, the motion is denied.

### BACKGROUND

Nereus Supply Chain, Inc., is a logistics company in the business of creating, developing, and implementing supply chain procurement technology and operating systems for logistics companies. (Third Am. Compl., ¶¶ 10, 12.) IM Zaretzky, LLC ("IMZ"), handles Nereus' invoicing. (*Id.* ¶ 56.) Ian Zaretzky is the sole owner of IMZ and the sole stockholder of Nereus. (*Id.* ¶ 3.)

Ben Maslowski and Matt Costello created the concept of Freightro, Inc. (*Id.* ¶ 13.) The venture was later joined by Alexander Bain. (*Id.* ¶ 14.) As Maslowski was familiar with Nereus' supply-chain procurement technology from a prior business engagement, he contacted Zaretzky to discuss whether Nereus would develop a similar program for Freightro. (*Id.* ¶ 16, 18.) Zaretzky agreed to build the supply-chain operating system (hereinafter "Freight Bidding Platform") and negotiated a contract on behalf of Nereus. (*Id.* ¶ 20.)

The first phase of the Freight Bidding Platform included the creation and development of the Minimum Viable Product ("MVP"). Zaretzky provided Freightro a Statement of Work for the Freight Bidding Platform MVP project on February 2, 2024. (*Id.* ¶ 21.) The Statement of Work identified the elements of work Nereus would perform for the MVP project, along with a timeline for execution and the costs and fees associated with the MVP. (*Id.* ¶¶ 36–38.) Nereus and Freightro agreed the total cost of the MVP project would be $140,000. (*Id.* ¶ 39.)

Plaintiffs allege that the Statement of Work also included a licensing agreement for Nereus' preexisting proprietary technology ("Preexisting Nereus Technology"), including its preexisting codebases, software frameworks, system architecture, and infrastructure. (*Id.* ¶ 23.) The purpose of the licensing agreement was to identify the terms under which Freightro could use the Preexisting Nereus Technology while confirming ownership remained exclusively with Nereus. (*Id.* ¶ 25.) Plaintiffs allege that the Preexisting Nereus Technology does not contain the code created for Freightro, and Freightro's code cannot run without the Preexisting Nereus Technology. (*Id.* ¶¶ 26–27.) Nereus provided Freightro with the licensing agreement on or about February 19, 2024, granting Freightro authorization to use the Preexisting Nereus Technology. (*Id.* ¶ 29.) The licensing agreement included a base licensing fee of $23,000 per month for two years ($552,000) and a buyout provision whereby the

2

technology could be purchased for the base licensing fee plus $115,000 ($667,000). (*Id.* ¶ 30–31.) Zaretzky and Maslowski discussed the terms by telephone. (*Id.* ¶ 32.)

Plaintiffs allege that in or around March 2024, Maslowski offered Zaretzky a five percent equity interest in Freightro as compensation for the licensing agreement, to which Zaretzky agreed. (*Id.* ¶¶ 33–34.) Shortly thereafter, Nereus and Freightro agreed that following delivery of the MVP, Nereus would limit its monthly invoices to $56,000, and would defer $21,000 of the monthly invoices while Freightro secured additional funding. (*Id.* ¶¶ 40–42.) Zaretzky alleges that he agreed to the deferment based on his equity interest in Freightro. (*Id.* ¶ 43.) Maslowski directed Zaretzky and his team to continue with the MVP project and Nereus delivered the Freight Bidding MVP to Freightro in or around May 2024. (*Id.* ¶¶ 44–45.) The MVP program launched on or about June 1, 2024. (*Id.* ¶ 47.)

Plaintiffs allege that Nereus provided the Second Statement of Work to Freightro around June 1, 2024. (*Id.* ¶ 48.) The Second Statement of Work included additional expansion features including accounting, bid management, mobile notifications, and contracting. (*Id.* ¶ 49.) Plaintiffs allege that Zaretzky and Maslowski agreed with the terms of the Second Statement of Work and Nereus delivered the new features and enhancements. (*Id.* ¶¶ 50–52.)

In August, Plaintiffs allege that Zaretzky was offered and accepted a ten percent ownership interest in Freightro in exchange for the technology licensing agreement and Nereus' continued deferral of monthly invoices. (*Id.* ¶ 54.) Zaretzky discussed the agreement with Maslowski, Costello, and Bain, wherein they confirmed that Zaretzky possessed ten percent ownership in Freightro. (*Id.* ¶ 55.)

IMZ subsequently invoiced Freightro for Nereus' work on the project, and Freightro submitted an aggregate sum of $190,500. (*Id.* ¶¶ 56–57.) Plaintiffs allege that because the

3

amount paid was far less than the agreed upon monthly fee, IMZ/Nereus submitted an invoice to Freightro for payment of the outstanding fees. (*Id.* ¶ 58.)

Plaintiffs allege that Maslowski became aggressive regarding the invoice and Freightro's ability to pay. (*Id.* ¶ 59.) On September 17, 2024, Maslowski sent Zaretzky an email stating, "any agreements we have previously sent are now considered void and will not be in effect moving forward," until Nereus and Freightro resolved the outstanding invoices and dispute concerning ownership of the specialized Freightro code. (*Id.* ¶ 60.) Between September 17, and September 25, Maslowski sent several messages to Zaretzky threatening to stop development and payments if Nereus did not sign an agreement confirming the specialized Freightro code, excluding the Preexisting Nereus Technology, was the property of Freightro. (*Id.* ¶¶ 61–63.) Maslowski confirmed that Freightro only sought ownership of the Freightro MVP Code and not the Preexisting Nereus Technology. (*Id.* ¶ 63.) On September 25, 2024, IMZ, Zaretzky, and Maslowski signed a contract which Plaintiffs allege excepted the Preexisting Nereus Technology from Freightro's ownership ("September Agreement"). (*Id.* ¶¶ 64–65; Ex. A, Docket # 17-1.) The following day, Bain advised Zaretzky that Freightro had terminated all agreements with Nereus. (*Id.* ¶ 66.)

Plaintiffs allege that Freightro continues to unlawfully use the Preexisting Nereus Technology and has not compensated Zaretzky for his ten percent equity interest in Freightro. (*Id.* ¶¶ 69–70.) Plaintiffs further allege that Freightro's remaining outstanding balance for services related to the Statements of Work total $181,900. (*Id.* ¶ 68.) Plaintiffs assert various claims under state law, including breach of contract, breach of the covenant of good faith and fair dealing, malicious injury to business, intentional interference with a contract, and conversion.

## LEGAL STANDARD

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) challenges the sufficiency of the complaint on the basis that the plaintiff has failed to state a claim upon which relief can be granted. A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Supreme Court has interpreted this language to require that the plaintiff plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In *Ashcroft v. Iqbal*, the Supreme Court elaborated further on the pleadings standard, explaining that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," though this "standard is not akin to a 'probability requirement.'" 556 U.S. 662, 678 (2009). The allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (internal citation omitted).

When determining the sufficiency of a complaint, the court should engage in a two-part analysis. *See McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011). First, the court must "accept the well-pleaded facts in the complaint as true" while separating out "legal conclusions and conclusory allegations merely reciting the elements of the claim." *Id.* (citing *Iqbal*, 556 U.S. at 680). Next, "[a]fter excising the allegations not entitled to the presumption [of truth], [the court must] determine whether the remaining factual allegations 'plausibly suggest an entitlement to relief.'" *Id.* (citing *Iqbal*, 556 U.S. at 681). As explained in *Iqbal*, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." 556 U.S. at 679. All factual allegations and any reasonable inferences must be

construed in the light most favorable to the nonmoving party. *Price v. Bd. of Educ. of City of Chicago*, 755 F.3d 605, 607 (7th Cir. 2014).

## ANALYSIS

Plaintiffs allege six causes of action, four of which are relevant to this motion: breach of contract arising from the Statement of Work; breach of contract arising from the Technology Licensing Agreement; breach of the duty of good faith and fair dealing; and conversion. Defendants move for dismissal of the claims for breach of contract, breach of the covenant of good faith and fair dealing, and conversion based on the September Agreement.

    1.    *Breach of Contract (Counts One and Two)*

Plaintiffs allege Freightro breached the Statement of Work and the Technology Licensing Agreement by failing to adequately compensate Nereus for work performed. Defendants move for dismissal, arguing that the September Agreement constitutes the sole agreement between the parties and prohibits consideration of any allegations that conflict with the Agreement's terms. The September Agreement contains a New York choice of law provision. Though Plaintiffs argue the choice of law provision should not apply because Defendants "materially breached" the September Agreement, Plaintiffs do not expand on this issue. Thus, I apply New York law to interpret the Agreement.

To state a claim for breach of contract under New York law, a plaintiff must allege: 1) the existence of a contract; 2) performance by the plaintiff; 3) breach by the defendant; and 4) damages attributable to the breach. *Trireme Energy Dev., LLC v. RWE Renewables Americas, LLC*, 2023 WL 5469662, at *12 (S.D.N.Y. Aug. 24, 2023). "[T]o prevail on a motion to dismiss for breach of contract, the contract must unambiguously support the defendant's position." *Id.* While courts "are not obliged to accept the allegations of the complaint as to

how to construe a contract," they "should resolve any contractual ambiguities in favor of the plaintiff on a motion to dismiss." *Id.* (citations omitted). "[I]f a contract is ambiguous as applied to a particular set of facts, a court has insufficient data to dismiss a complaint for failure to state a claim." *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 178 (2d Cir. 2004).

The September Agreement provides, in relevant part:

> Developer [IM Zaretzky LLC (d/b/a Nereus Supply Chain Technologies)] has developed the software, and delivered the source code, described in Schedule 1 ("Phase 1 Build") as the initial development of the FR STMS solution, and Freightro has paid $200,500 against the invoices issued by Developer in the amount of $195,000 ("Phase 1 Payment"), with the overpayment of $5,000 to be applied against future invoices.

(Docket # 17-1 at 1.)

Defendants point to this contract provision and the Agreement's merger clause to argue that Plaintiffs are foreclosed from alleging they are owed compensation under agreements executed prior to the September Agreement. Further, Defendants argue that by omitting Plaintiffs' ownership interest in Freightro from the September Agreement, Plaintiffs forfeited their ownership interest when they signed the September Agreement. Plaintiffs argue, however, that the September Agreement only applies to Phase 1 and does not pertain to the Phase 2 Statement of Work, the Technology Licensing Agreement, or Zaretzky's ten percent interest in Freightro. (Pls.' Br. at 8–9.) Because I find Defendants' reliance on the September Agreement to be premature at this time, I do not address Plaintiffs' arguments that Nereus is not a party to the Agreement.

The September Agreement's merger clause provides:

**2. ENTIRE AGREEMENT**

7

> This Agreement, together with all Schedules and any other documents incorporated herein by reference, constitutes the sole and entire agreement of the parties to this Agreement with respect to the subject matter of this Agreement and supersedes all prior and contemporaneous understandings, agreements, representations and warranties, both written and oral, with respect to such subject matter.

Under New York law, "[a] subsequent contract regarding the same subject matter will supersede a prior contract, but only with regard to that same subject matter." *Pope Contracting, Inc. v. New York City Housing Auth.*, 186 N.Y.S.3d 150, 153 (N.Y. App. Div. 2023). A subsequent contract, however, "that does not pertain to 'precisely the same subject matter' will not supersede an earlier contract unless the subsequent contract has definitive language indicating it revokes, cancels or supersedes that specific prior contract." *Tiffany & Co. v. Lloyd's of London Syndicates 33, 510, 609, 780, 1084, 1225, 1414, 1686, 1861, 1969, 2001, 2012, 2232, 2488, 2987, 3000, 3623, 4444, 4472, & 4711*, 211 N.Y.S.3d 894 (N.Y. Sup. Ct. 2024) (citing *Glove Food Servs. Corp. v. Consol. Edison Co. of NY*, 584 N.Y.S.2d 820, 821 (N.Y. App. Div. 1992)).

At this stage of the litigation, it is unclear whether the September Agreement unambiguously supersedes all prior agreements because the subject matter of the Agreement appears to only pertain to the Phase 1 STMS Build. Indeed, the Agreement is titled "Freightro Phase 1 STMS Build," references "future invoices," and states "Freightro and Developer wish to memorialize and document ownership of the Phase 1 Build prior to moving forward on further development." (Docket # 17-1.) Given that the language implies an ongoing business relationship with future payments, I cannot conclude the Agreement constitutes the sole agreement between the parties and supersedes all prior agreements on a motion to dismiss. This is especially so since the September Agreement does not explicitly reference any of the prior agreements Plaintiffs allege Defendants have breached. Additionally, at this stage, I

8

must construe the complaint's allegations in the light most favorable to the Plaintiffs, and Plaintiffs argue that the September Agreement does not encompass the Phase 2 Statement of Work, the Technology Licensing Agreement, or Zaretzky's ten percent equity interest.

Further, Defendants' argument is not that the complaint fails to sufficiently allege a breach of contract claim. Rather, Defendants argue that Plaintiffs cannot use allegations that conflict with the September Agreement's provisions to claim they are owed additional compensation or a ten percent equity interest in Freightro. But the Court cannot disregard on a motion to dismiss Plaintiffs' well-pleaded facts alleging they are entitled to additional compensation under other agreements. At this stage, the question is whether the complaint states plausible breach of contract claims— it does. Indeed, the complaint alleges the existence of a contract; Plaintiffs' performance; Defendants' breach by failing to compensate Plaintiffs for work performed; and damages flowing from that breach. As such, Defendants' motion to dismiss the breach of contract claims is denied.

2. *Duty of Good Faith and Fair Dealing*

Defendants do not make a separate argument for why the claim for breach of the covenant of good faith and fair dealing should be dismissed. As such, the claim survives.

3. *Conversion*

Lastly, Plaintiffs allege Defendants converted the Preexisting Nereus Technology without providing Zaretzky with a ten percent equity interest in Freightro and continues to interfere with Nereus' exclusive right to control the technology. (Compl. ¶¶ 122–29.) Defendants argue Plaintiffs' claim fails because the September Agreement shows that the property at issue belongs to Defendants. Nor can Plaintiffs, Defendants argue, owe Plaintiffs a licensing fee for software they already own.

9

To state a conversion claim, a plaintiff must allege: "(1) the property subject to conversion is a specific identifiable thing; (2) plaintiff had ownership, possession or control over the property before its conversion; and (3) defendant exercised an unauthorized dominion over the thing in question, to the alteration of its condition or to exclusion of the plaintiff's rights." *Moses v. Martin*, 360 F. Supp. 2d 533, 541 (S.D.N.Y. 2004).

Again, Defendants' arguments are premature. Defendants argue that there can be no conversion claim because the September Agreement establishes that Defendants possess all databases and source code as part of its ownership of the Phrase 1 STMS Build. They argue that Plaintiffs fail to identify exactly what "Preexisting Nereus Technology" Defendants allegedly converted. In response, Plaintiffs argue that the September Agreement specifically excluded the Preexisting Nereus Technology from Defendants' ownership. These are factual disputes. It is not for the Court to resolve on a motion to dismiss whether Defendants own the property at issue. Defendants' motion to dismiss the conversion claim is denied.

## ORDER

**NOW, THEREFORE, IT IS ORDERED** that Defendant's Motion to Dismiss (Docket # 21) is **DENIED**. The clerk will contact the parties to set a Rule 16 scheduling conference in this matter.

Dated at Milwaukee, Wisconsin this 5th day of February, 2026.

BY THE COURT:

_____
NANCY JOSEPH
United States Magistrate Judge

10